**CAMBIST FILMS, INC., a New York corporation, Plaintiff,**

**v.**

**STATE OF ILLINOIS, George Sangmeister, State's Attorney of Will County, Illinois, Martin Jackson, Sheriff of Will County, Illinois and Dennis Jaskoviak, Chief Deputy Sheriff of Will County, Illinois, Defendants.**

No. 68 C 1714.

United States District Court
N. D. Illinois, E. D.

Oct. 16, 1968.

Opinion Oct. 21, 1968.

Russell G. Miller, Mass & Miller, Chicago, Ill., Jerald S. Galowich, Galowich, Galowich & McSteen, Joliet, Ill., for plaintiff.

William G. Clark, by Michael Lyons, Chicago, Ill., for defendants.

### FINDINGS OF FACT and CONCLUSIONS OF LAW

WILL, District Judge.

This is an action brought under the Civil Rights Act, 42 U.S.C. § 1983, in which plaintiff, Cambist Films, seeks injunctive relief from the seizure of a motion picture and from a criminal prosecution based on the alleged offense of obscenity. The Court, having considered the pleadings, exhibits and statements of counsel, and after having viewed the motion picture film entitled "Aroused", hereby enters the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Plaintiff, Cambist Films, is a corporation duly organized and existing under the laws of the State of New York, and owns, licenses, distributes and makes moving picture films.

2. The individual defendants, George Sangmeister, Martin Jackson, and Dennis Jaskoviak are citizens of the State of Illinois and officials of the State of Illinois.

3. This Court has jurisdiction of the subject matter of this action under 42 U.S.C. § 1983.

4. On or about June 1, 1968, defendant George Sangmeister, together with Will County Circuit Judge · Michael A. Orenic, Will County Magistrate Thomas Wilson, and defendant Dennis Jaskoviak viewed the film "Aroused", as patrons of the Princess Theatre, 62 North Chicago Street, in Joliet, Illinois.

5. After viewing the film "Aroused" and without notice to the owner of the film, Cambist Films, or to the exhibitor, Princess Theatre, or to its Manager, Aaron E. Tribbett, and without their consent, and without affording said persons an opportunity to be heard or be present, on June 1, 1968 defendant Jaskoviak signed a criminal Complaint asserting that he had viewed the film, that the film was obscene, and that the film was showing at the Princess Theatre in Joliet, Illinois.

6. Pursuant to the filing of said criminal Complaint, a warrant for the arrest of Aaron E. Tribbett, Manager of the Princess Theatre, was issued on June 1, 1968, by Thomas Wilson, Magistrate in the Circuit Court of the 12th Judicial District, Will County, and a search warrant was also issued directing that the Princess Theatre in Joliet, Illinois be searched and that all prints of the film "Aroused'" found therein be seized.

6. On June 1, 1968, defendants Jaskoviak, Sangmeister and other persons entered onto the premises of the Princess Theatre, 62 North Chicago Street, Joliet, Illinois, and seized the print of the moving picture "Aroused" consisting of four reels of film, pursuant to the search warrant issued by Magistrate Wilson. Defendants also arrested Aaron E. Tribbett, Manager of the Princess Theatre, pursu-

ant to the Warrant of Arrest issued by Magistrate Wilson.

7. The seizure of the film "Aroused", and the arrest of Mr. Tribbett, were accomplished without any prior adversary hearing on the question of obscenity.

8. In Metzger v. Illinois, Civil No. 67 C 2194 (N.D.Ill. filed June 19, 1968), a judge of this court enjoined the seizure of the film "I, A Woman" and related criminal prosecution by officials of the State of Illinois, on the ground that there had been no adversary hearing on the question of obscenity prior to the seizure and arrest. On October 3, 1968, defendant Sangmeister was joined as party defendant in the *Metzger* case and was ordered to return the film "I, A Woman" to the persons from whom it had been seized, and was restrained from taking any further steps, other than to ask for dismissal, in the criminal prosecution entitled People v. Margaret Scalan, W 67 C–47, which was then pending in the Circuit Court of the 12th Judicial District, Will County, Illinois.

### Conclusions of Law

1. The Court has jurisdiction of the subject matter and jurisdiction over the parties.

2. Plaintiff has standing to bring this action and the complaint states a claim on which relief may be granted.

3. The seizure of the print of the motion picture "Aroused" made pursuant to the search warrant executed by Magistrate Wilson on June 1, 1968, was made in violation of the First Amendment of the Constitution of the United States.

4. Because the motion picture "Aroused" is not obscene and because defendants have engaged in a continuing course of conduct in violation of the Constitution of the United States, this Court must enjoin defendants from any criminal prosecution based on the alleged offense of obscenity.

### OPINION

This is an action brought under the Civil Rights Act, 42 U.S.C. § 1983, in which plaintiff asks for equitable relief from the seizure of a motion picture film ubiquitously entitled "Aroused", and for an injunction against a criminal prosecution on the charge of obscenity for exhibiting the film in question. The undisputed facts of this case are that prior to the seizure of the film, the State's Attorney of Will County, Illinois, a Magistrate of Will County, a Circuit Judge of Will County, and defendant Jaskoviak, viewed the film while it was showing at the Princess Theatre, in Joliet, Illinois. A criminal complaint was subsequently executed and filed on June 1, 1968, against Aaron E. Tribbett, Manager of the Princess Theatre, in the Circuit Court of the 12th Judicial District of the State of Illinois, Magistrate Division, and a warrant for the arrest of Mr. Tribbett was issued. Simultaneously a search warrant was also issued directing that the Princess Theatre be searched and all prints of the film found therein be seized. The arrest and search warrants were executed on the same day, June 1, 1968.

The seizure of the film and the related criminal prosecution were undertaken in clear violation of the First Amendment of the Constitution of the United States. It is well established that prior to suppression by law enforcement officials of allegedly obscene material there must be an adversary hearing on the question of obscenity. The law demands this procedural safeguard to ensure against the prior restraint and suppression of constitutionally protected expression.[1] A Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 211–222, 84 S.Ct. 1723, 12 L.Ed.2d 809

---

1. It is also well established that motion pictures are protected by the constitutional guarantees of freedom of speech and press. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). Kingsley International Pictures Corp. v. Regents of University of State of New York, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959). Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).

(1964); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968). Defendants contend that the constitutional requirement of an adversary hearing was satisfied in this case by virtue of the informal gathering of the prosecuting authorities, a local Magistrate and a County Circuit Judge in the Princess Theatre, which took place before the film was seized. But there is no due process, constitutional or otherwise, in such a gathering. A judge is not discharging the duties of his office or conducting court when he attends a movie theatre as a paying patron. More important, by definition, the heart of an adversary proceeding before suppression of a medium of expression may be effected, is the opportunity for adversary presentation to ensure that expression will not be suppressed without contest and justification. The absence of a formal adversary proceeding is therefore in fact and in law constitutionally critical. Our freedoms survive and thrive through institutions and procedures such as the adversary hearing required in this case.

■ As relief from the unlawful acts of defendants, plaintiff has asked this Court not only to order the return of the films seized, but also to enjoin the criminal obscenity prosecution of the theatre manager. The federal courts will normally refrain from granting equitable relief from state criminal prosecution on the basis of the doctrine of abstention or on the basis of the comity necessary for the successful functioning of our federal system of government. However, the outstanding exception to this is the area of First Amendment freedoms. The courts have recognized that the exercise of these freedoms is subject to irreparable injury when unlawful criminal prosecution is threatened or maintained.[2]

In Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1967), the Supreme Court held that bad faith enforcement of state law constitutes a ground for federal equitable relief from state court criminal proceedings. Subsequently, such relief has been considered and granted by federal district courts.[3] Dombrowski involved an action under the Civil Rights Act in which plaintiffs sought declaratory and injunctive relief to restrain the prosecution or threat thereof for alleged violations of the Louisiana Subversive Activities and Communist Control Law and Communist Propaganda Control Law. Plaintiffs asserted two distinct grounds for relief: 1) that defendants had invoked, and threatened to continue to invoke, state statutes in bad faith to harass plaintiffs and discourage their civil rights activities, and 2) that the statutes were unconstitutionally vague and overly broad regulations of First Amendment freedom of expression.

The Supreme Court found that the complaint alleged sufficient irreparable injury to justify equitable relief, Id. at 489, 85 S.Ct. at 1122; and the Court held that the absention doctrine is "inappropriate for cases * * * where * * * statutes are justifiably attacked on their face as abridging free expression, or as applied[4] for the purpose of discouraging protected activities." Id. at 489–490, 85 S.Ct. at 1122. The majority opinion immediately went on to declare that the allegation of bad faith enforcement of state law states a claim under the Civil Rights Act, 42 U.S.C. § 1983, involving an unconstitutional chilling of the exercise of First Amendment freedom of expression.

2. See, Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1967); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Bush v. Orleans Parish School Board, 194 F.Supp. 182, affirmed sub nom; Tugwell v. Bush, 367 U.S. 907, 81 S.Ct. 1926, 6 L.Ed.2d 1250 (1961); Gremillion v. United States, 368 U.S. 11, 82 S.Ct. 119, 7 L.Ed.2d 75 (1961).

3. See, Carmichael v. Allen, 267 F.Supp. 985 (N.D.Ga.1967); Ware v. Nichols, 266 F.Supp. 564 (N.D.Miss.1967); Landry v. Daley, 288 F.Supp. 200 (N.D. Ill., filed July 3, 1968).

4. Emphasis added.

█ This was the Court's conclusion apart from the additional question of the constitutionality of the state statutes, though the Court also held that the statutes were invalid as overly broad and vague regulations that create "a 'danger zone' within which protected expression may be inhibited." Id. at 494–496, 85 S.Ct. at 1125. *Dombrowski* thus holds that either bad faith enforcement *or* the unconstitutionality of a statute regulating freedom of expression, if proven to a federal court, will justify and require federal equitable relief from state criminal prosecution. Either ground involves avoiding the "chill" on the exercise of freedom of expression protected by the First Amendment. In recognition of this, subsequent decisions of the Supreme Court have focused bad faith enforcement as an independent ground in determining whether federal equitable relief against a state court criminal prosecution may be granted. Cameron v. Johnson, 381 U.S., 741, 747, 85 S.Ct. 1751, 14 L.Ed.2d 715 (1967); Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed. 2d 182 (1968).

The instant case clearly involves the sort of irreparable injury to constitutionally protected expression which *Dombrowski* was meant to relieve. The mere passage of time during the pendency of the unlawful confiscation and criminal prosecution inevitably results in the complete suppression of the expression for that period. As the Supreme Court recognized in *Dombrowski*, "the chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure." Id. at 487, 85 S.Ct. at 1121. Furthermore, given that the economic interest of any theatre owner in displaying a film is likely to be far outweighed by his interest in avoiding threatened criminal prosecution, the "chill" from this suppression is likely to extend well beyond the borders of Will County. Finally, it should also be recognized that by such suppression the public at large may be deprived of its right and access to constitutionally protected expression.

Considering the clear threat to freedom of expression which this situation presents, the questions remaining for the Court are whether or not the film is obscene under the decided cases and whether or not defendants did in fact engage in a continuing course of conduct that would justify the use of this Court's equitable powers to enjoin criminal prosecution in a state court. As part of that determination, the parties asked the Court to view the film "Aroused" to decide whether in a proper adversary hearing the film could be found to be obscene. The Court acceded to this request and viewed the film on October 4, 1968.

█ After viewing the film it is now clear to the Court that, under the decided cases, the version of the film "Aroused" confiscated from the Princess Theatre is not obscene. This is particularly true under the standards established by the Supreme Court of Illinois. In American Civil Liberties Union v. City of Chicago, 3 Ill.2d 334, 121 N.E.2d 585, the Supreme Court of Illinois held that a motion picture film is obscene

* * * if, when considered as a whole, its calculated purpose or dominant effect is substantially to arouse sexual desires, and if the probability of this effect is so great as to outweigh whatever artistic or other merits the film may possess. By making this determination the film must be tested with reference to its effect upon the normal, average person. Id. at 347, 121 N.E.2d at 592.

The film "Aroused" is an unhappy study of a homicidal psychopath. It is a "whodunit" about the son of a prostitute whose childhood experiences cause him to murder women and prostitutes in particular. Unless one ignores the plot, the dominant effect throughout the film is the very antithesis of an arousal of sexual desire. Illicit sexual conduct is

consistently identified with personal disaster and even death.

Although sexual relations are strongly implied in some of the scenes, there is no outright portrayal thereof, and while there are some scenes which if viewed in isolation might be sexually stimulating, the overall impact is depressing. The opinion of the Illinois Supreme Court in American Civil Liberties Union v. City of Chicago deals specifically with this type of situation. The Court declared that a work would not be obscene under its standard if "in the context of the whole work, incidents of sexual misconduct may be so presented as to arouse pity or revulsion rather than desire." Id. at 345, 121 N.E.2d at 591.

This is not to say that a primarily prurient film could survive the test put forward by the Illinois Supreme Court merely because the pornography was framed in a context of moral and psychological observation. In establishing its standard, the Illinois Supreme Court held that,

> The doctrine that a book must be considered as a whole does not, of course, mean that obscene matter becomes protected simply by being bound in the same cover with innocent matter. It does contemplate, however, that instances of obscene diction or episodes may be so slight or infrequent as not to impart an obscene flavor to the entire book. Id. at 591, 121 N.E.2d at 591.

The episodes of sexual conduct which are presented in the version of the film "Aroused" viewed by this Court are neither so explicit or frequent as to impart an obscene flavor to the film considered as a whole.

It may be added that the film is also not obscene under the standards established by the Supreme Court of the United States. It is not obscene under that Court's holding in Roth v. United States, 354 U.S. 476, 489, 77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498 (1956), where the Court stated that the test for obscenity is "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." Nor is there in this case evidence of pandering which might render an otherwise nonobscene work obscene under the standard declared in Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1963).

There is also in this case undisputed objective evidence of a continuing course of conduct by the authorities in Will County improperly to suppress expression. In recent litigation in this Court involving the film "I, A Woman", Metzger v. Illinois, Civil No. 67 C 2194 (N.D.Ill., filed June 19, 1968), there was a seizure of that film and arrests made without any prior adversary hearing on the question of obscenity. Judge Marovitz then held, on the basis of Metzger v. Pearcy, supra, and A Quantity of Copies of Books v. State of Kansas, supra, that the seizure and arrests were unlawful. On October 3 of this year, defendant Sangmeister was joined as a party defendant in the case concerning "I, A Woman". He was ordered to return the film and was restrained from taking any further steps in prosecution of the then pending criminal case. In the instant case, the defendants have similarly seized a film without a prior adversary hearing and are prosecuting the theatre manager for obscenity notwithstanding the recent "I, A Woman" litigation and the clearly established law on the matter.

■ In sum, the Court is confronted with an obvious continuing course of conduct in knowing violation of the First Amendment of the Constitution of the United States. Defendant Sangmeister must therefore return the film "Aroused" and he and his subordinates be permanently restrained from any criminal prosecution for the offense of obscenity based on the exhibition thereof. An appropriate order will enter.