**CAMBIST FILMS, INC., Plaintiff,**

v.

**William S. TRIBELL et al., Defendants.**

**No. 1735.**

United States District Court
E. D. Kentucky,
London Division.

Nov. 26, 1968.

Watson & Watson, by William A. Watson, Middlesboro, Ky., for plaintiff.

William Tribell, Middlesboro, Ky., Farmer Helton, Pineville, Ky., for defendants.

Before PECK, Circuit Judge, and SWINFORD and MOYNAHAN, District Judges.

SWINFORD, Chief District Judge.

The plaintiff is a New York corporation engaged in the business of distributing motion pictures and owner of the right to distribute the motion picture entitled "The Female" in this country. The defendants are a County Attorney, a Commonwealth's Attorney, and a Magistrate.

The film, "The Female", was exhibited at a theatre in Middlesboro, Kentucky, and on May 28, 1968, the film was seized by officers of the Middlesboro Police Department pursuant to a search warrant issued by the defendant Magistrate. The film remained in the custody of the police department until the latter part of October, when it was delivered to the Clerk of this court for viewing by this court.

The search warrant was issued on the basis of an affidavit of a detective with the police department. The affidavit stated that the affiant had seen the film "The Female", at the theatre and that it showed "men and women nude and engaging in acts and conduct which indi-

cated they were having sexual intercourse" and that it was obscene within the definition in the Kentucky statute (KRS 436.101(1) (c)), quoting the definition in substance. The Magistrate did not view the film either before or after the issuance of the search warrant. At a hearing on May 31, 1968, the defendant Magistrate held that there was sufficient evidence to justify holding the film in custody and referring the case to the Grand Jury, which met in October.

The plaintiff brought this action seeking compensatory and punitive damages and an order enjoining prosecution of the plaintiff in the state court and interference with the exhibition of the film and ordering release of the film. A district court of three judges was convened pursuant to sections 2281 and 2284 of Title 28, United States Code.

## I.

██ Because the line between protected and unprotected speech, under the First Amendment, is so difficult to draw, and because First Amendment rights are of such fundamental importance to our system of government, the Constitution requires a procedure "designed to focus searchingly on the question of obscenity" before speech can be regulated or suppressed. Marcus v. Search Warrants, 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127. The dissemination of a particular work, which is alleged to be obscene, should be completely undisturbed until an independent determination of obscenity has been made by a judicial officer, including an adversary hearing. A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 211, 84 S.Ct. 1723, 12 L.Ed.2d 809; Metzger v. Pearcy, 7 Cir., 393 F.2d 202, 204; United States v. Brown, S.D.N.Y., 274 F.Supp. 561; Cambist Films, Inc. v. Illinois, N.D.Ill., Eastern Div., 292 F. Supp. 185, decided October 21, 1968.

Although *A Quantity of Books,* supra, involved a search and seizure in a civil forfeiture case, the principles there announced apply as well to a search and seizure for the purpose of gathering evidence for a criminal obscenity prosecution. Such a seizure "imparts at least the same potential restraint on the dissemination of material protected by the First Amendment as one made solely for the purpose of commencing forfeiture proceedings." United States v. Brown, supra, 274 F.Supp. at 563. The instant case, in which the film has been in custody of local officials for more than five months without a judicial determination of obscenity, would seem to substantiate that proposition. In any case, KRS 436.101(9) authorizes the state court, upon final conviction, to order the destruction of the obscene matter.

██ The procedure employed in the instant case was little better than that condemned by the Court in Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313, decided by a brief per curiam on June 17, 1968. In *Lee Art Theatre,* the magistrate issued the warrant on the basis of an affidavit of a police officer stating that he had determined from personal observation that certain named motion pictures were obscene. In the instant case, the affidavit contained only slightly more than such conclusory allegations. In neither case did the magistrate view the film before issuing the warrant. The procedure followed in *Lee Art Theatre* "fell short of constitutional requirements demanding necessary sensitivity to freedom of expression." The same is true of the procedure followed in the instant case, and the film must be returned to plaintiff.

## II.

The plaintiff contends that KRS 436.-101 is unconstitutional in that it defines obscenity in terms more inconclusive than permitted by the standards established by the Supreme Court. KRS 436.101(1) (c) contains the definition:

" 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, a shameful or morbid interest in nudity, sex, or excretion,

which goes substantially beyond customary limits of candor in description or representation of such matters."

This definition is substantially the same as that found in the A.L.I. Model Penal Code, section 207.10(2) (Tent.Draft No. 6, 1957), which is essentially that adopted by the Court in Roth v. U. S., 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, ftnt. 20.

■ Plaintiff argues that *Roth* has been subject to considerable elaboration since it was decided in 1957, and this is certainly true. But the basic definition of obscenity found in *Roth* has not been changed. Mr. Justice Brennan, in an often quoted passage from A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Commonwealth of Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1, stated that three elements must coalesce before a work can be deemed obscene, "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." In listing these three elements, Mr. Justice Brennan was not making *additional* requirements but was merely explaining the *Roth* test. Indeed, the requirement of complete lack of redeeming social value was announced by the Court in Roth, 354 U.S. at 484, 77 S.Ct. 1304.

■ The definition of obscenity in KRS 436.101(1) (c) does not explicitly require that the material be utterly without redeeming social value. This Court is aware of no decisions by Kentucky courts construing this statute. In view of the fact that this definition was approved in *Roth,* it is inconceivable to this court that the Kentucky Court of Appeals would construe "obscene" in

KRS 436.101 as including material with any social value.

In any event, this court is of the opinion that KRS 436.101(7) can be construed as supplying the requirement of absence of redeeming social value. That subsection states:

"The prohibitions and penalties imposed hereby shall not extend to persons having bona fide scientific, educational, governmental, or other similar justification for conduct which would, except for such justification, be criminal under this chapter."

On its face, KRS 436.101 is constitutional.

### III.

■ In view of this court's holding that the Kentucky statute is valid and in view of plaintiff's failure to prove its allegation that the statute is not being enforced in good faith, this court cannot enjoin prosecution of the plaintiff. Cf. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22.

■ Indeed, after having viewed the film, this court is of the opinion that it is not protected by the First Amendment under any of the various tests enunciated by the Supreme Court. The dominant theme, presented through repeated scenes of sexual gratification, in one form or another, is blatantly designed to appeal to a prurient interest in sex. It is patently offensive in its representation of sexual matters and is utterly without redeeming social value. The Biblical passage presented at the beginning of the film does not ipso facto clothe it with constitutional protection nor camouflage its dominant theme. The entire film is devoid of literary or artistic merit. The offensive scenes are done with grossness, not subtlety, and have little relation to the simple plot.

An order in conformity with this memorandum is this day entered.