Lennox **RAPHAEL**, James Sullivan, Edward Wode, Donald McAdams, Sait Muneyycirci, Paul Georgiou, Larry Bercowitz, John Kornhauser, Mary Ann Shelley and Jean Baretich, Plaintiffs,

v.

Frank S. **HOGAN**, District Attorney, New York County, and Howard R. Leary, Police Commissioner of the City of New York, Defendants.

No. 69 Civ. 1261.

United States District Court
S. D. New York.
April 28, 1969.

Lefcourt, Garfinkle, Crain & Cohn, New York City, for plaintiffs; William E. Crain, New York City, of counsel.

Frank S. Hogan, Dist. Atty. New York County, New York City, for defendant; Michael R. Juviler, Lewis R. Friedman, Herman Kaufman, Asst. Dist. Attys., of counsel.

J. Lee Rankin, Corp. Counsel, New York City, for defendant Howard R. Leary; John J. Loflin, Jr., New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, pro se; Robert S. Hammer, Asst. Atty. Gen., of counsel.

## OPINION

COOPER, District Judge.

This action arises out of the public performance in the Borough of Manhattan, City of New York, of the play "Che!" and the ensuing arrests and pending prosecution by the State of New York of the author, director, actors, actresses, and other persons associated

with its production (the plaintiffs herein) for obscenity,[1] consensual sodomy,[2] public lewdness,[3] disseminating indecent material to minors,[4] and conspiracy.[5]

The play itself is not before us on this application. We have neither seen nor heard any portion of it; we are entirely unacquainted with a single word of its dialogue. The only references to it in the moving papers are to certain physical acts which are hereinafter mentioned. Plaintiffs seek a court order which will strike down the prohibitions of the penal laws referred to on the ground that on their face and as applied they do violence to their constitutional rights.

The play opened on March 22, 1969, after having given a series of public previews. Two days later, Judge Amos S. Basel of the Criminal Court of the City of New York attended a full performance of the play, and at its conclusion he signed arrest warrants for the plaintiffs which were immediately executed. Plaintiffs were thereafter arraigned on complaints charging them with a "performance which was obscene in content, said performance including scenes in which various performers fondled one anothers naked sexual organs and engaged in or aided or abetted in deviate sexual intercourse to wit, acts of oral and anal sodomy."[6]

In their complaint, plaintiffs attack the facial constitutionality and application of all the aforementioned criminal statutes. Their prayer for relief seeks the convening of a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284; the issuance of a permanent injunction restraining the defendants Hogan, the District Attorney of New York County, and Leary, the Police Commissioner of New York City, from prosecuting the pending criminal charges and from instituting further criminal proceedings under the aforementioned statutes for any future performances of the play;[7] and the issuance of a declaratory judgment declaring all the aforementioned statutes "void on their face" as violative of the Constitution of the United States.

Plaintiffs' complaint alleges jurisdiction in this Court pursuant to 28 U.S.C. §§ 1331(a), 1343(3) and(4), 2201, 2202, and 2281 and 42 U.S.C. § 1981 et seq., and under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States. Plaintiffs also allege that the amount in controversy exceeds $15,000, exclusive of interest and costs.

On March 27, 1969, plaintiffs presented an order to show cause, which included a temporary restraining order enjoining both the pending state criminal prosecution and further arrests for future performance of the play, to Judge Bonsal of this Court. After denying the temporary injunction and deleting it from the order to show cause, Judge Bonsal signed the order bringing on the instant motion to convene a three-judge court before this Court on April 1, 1969.[8]

1. Penal Law, McKinney's Consol.Laws c. 40, § 235.05

2. Penal Law § 130.38

3. Penal Law § 245.00

4. Penal Law § 235.21

5. Penal Law § 105.00

6. Affidavit of John J. Loflin, verified March 31, 1969, Exhibit A.

7. Plaintiffs assert that since their arrests no public performances of "Che!" have been held.

8. Plaintiffs' papers failed to comply with Rule 9(b) of the General Rules of this Court in that no memorandum of law accompanied the moving papers. At the time of oral argument, April 1, 1969, plaintiffs requested and received an extension of a "few days" within which to serve and file their memorandum. Additional extensions were sought and granted on April 3rd and 7th. On April 8th, plaintiffs filed their memorandum of law with this Court. A Supplemental Memorandum of law was submitted by plaintiffs on April 10th. Defendants filed their reply memoranda on April 14th.

Plaintiffs' motion is opposed by both defendants who in turn cross-move to dismiss the complaint for failure to present a substantial federal question.

■ In ruling on plaintiffs' demand for a three-judge court, it is the function of this Court to determine whether a substantial constitutional question has been raised with respect to the state statutes under attack, whether the complaint sets forth a basis or bases for equitable relief, and whether the other requirements for a three-judge court are met. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Green v. Board of Elections of City of New York, 380 F.2d 445 (2d Cir. 1967); American Commuters Association, Inc. v. Levitt, 405 F.2d 1148 (2d Cir. 1969). If the complaint fails to raise a substantial federal question with respect to a state statute, a three-judge court must be denied and the action dismissed. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Ex Parte Poresky, *supra*. The Supreme Court has stated that "[t]he lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this Court as to foreclose the subject." California Water Service Co. v. City of Redding, *supra*, at 255, 58 S.Ct., at 867; American Commuters Association, Inc. v. Levitt, supra; Green v. Board of Elections of City of New York, *supra*.

Before turning to whether plaintiffs' claims of unconstitutionality have sub-stantiality,[9] we emphasize that we are not here ruling on whether the play "Che!" is obscene, or whether any of the other alleged offenses did in fact occur. We have not viewed the play; indeed, disposition of the instant motions does not require it.

### Obscenity

■ In an imaginative argument, plaintiffs vigorously assert that the Supreme Court's recent decision in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (April 7, 1969), clearly establishes that the prosecution of them for violation of the obscenity laws is unconstitutional. Suffice it to say that the Supreme Court made it quite clear that their opinion in *Stanley* did not affect *Roth*[10] and its progeny:

> *Roth* and the cases following that decision are not impaired by today's holding. As we have said, the States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home. Id. at 568, 89 S.Ct., at 1249.

Plaintiffs attack the New York obscenity statute[11] as being constitutionally defective on its face and as applied. Both these constitutional challenges rest on the assertion that the statutory definition of obscenity[12] applies an improper relevant audience to judge the prurient-appeal phase of the obscenity test. Section 235.00 of the New York Penal Law provides, in part, that the "[p]redominant appeal [to prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism] shall be judged with reference to *ordinary adults* unless it appears from the character of the material or the circumstances of its dissemination to be designed for children or other special-

---

9. While their complaint broadly attacks the constitutionality of all the aforementioned criminal statutes, *infra* notes 1–5, plaintiffs' moving papers, including their memorandum of law, only raise questions as to the constitutionality of the obscenity and consensual sodomy statutes.

10. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

11. Penal Law § 235.05

12. Penal Law § 235.00

ly susceptible audience." (emphasis added.) Plaintiffs contend that "ordinary adults" are the wrong audience to judge the predominant appeal of "Che!" They assert that "the people who see 'Che' are the off-off-Broadway theatre-goers who are a far more sophisticated audience, both intellectually, educationally and culturally than the 'ordinary person'."[13] Apparently plaintiffs believe that their play would not appeal to the prurient interest of this vaguely defined off-off-Broadway group.

In Mishkin v. New York, 383 U.S. 502, 508–509, 86 S.Ct. 958, 963–964, 16 L.Ed. 2d 56 (1966), the Supreme Court recognized that:

> Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement of the *Roth* test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group. The reference to the 'average' or 'normal' person in *Roth* * * * does not foreclose this holding. In regard to the prurient-appeal requirement, the concept of the 'average' or 'normal' person was employed in *Roth* to serve the essentially negative purpose or expressing our rejection of that aspect of the *Hicklin* test * * * that made the impact on the most susceptible person determinative.

■ Apparently we are not here dealing with a play designed for a "deviant sexual group," but rather one whose probable recipient group is the public at large. While holding their play out for the adult viewing public, plaintiffs would have its prurient-appeal judged by its impact on those they believe to be *least susceptible*. We must disagree. "Material distributed to the public at large may not be judged by its appeal to the most sophisticated * * *." United States v. 31 Photographs, Etc., 156 F.Supp. 350, 355 (S.D.N.Y.1957). Cf. Roth v. United States, 354 US. 476, 490, 77 S.Ct. 1304, 1 L.Ed. 2d 1498 (1957).

Plaintiffs have not raised a substantial federal question with respect to the validity or application of New York's obscenity statute.

### Consensual Sodomy

Plaintiffs next attack New York's consensual sodomy statute[14] as being void on its face for "overbreadth." In support of their position, they rely on the well established principle that "[a] governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." Zwickler v. Koota, 389 U.S. 241, 250, 88 S.Ct. 391, 396, 19 L.Ed. 2d 444 (1967).

It is plaintiffs' position that the First Amendment of the Constitution of the United States protects acts of "deviate sexual intercourse"[15] when performed in public between unmarried consenting adults if such conduct is part of a dramatic work. We assume that the specific conduct here in question relates to those acts of oral and anal sodomy charged in the criminal complaints. Further, we note that plaintiffs contend that "[t]he alleged acts of the players * * * are not actually performed but are merely simulated;"[16] if this is true, it would appear that plaintiffs have a valid defense to the consensual sodomy charge since "contact" is an element of the offense.[17] In any event, since plaintiffs' argument proceeds on the supposition that certain public acts of sodomy are constitutionally protected, we will as-

13. Plaintiffs' Memorandum, p. 23.
14. Penal Law § 130.38.
15. Penal Law § 130.00.
16. Plaintiffs' Memorandum, p. 14.
17. Penal Law §§ 130.00 and 130.38.

sume, *arguendo*, that their acts violated New York's consensual sodomy statute.[18]

■ Turning to the merits, we start off with the well settled proposition that "obscenity is not within the area of constitutionally protected speech or press." [19] Roth v. United States, 354 U.S. at 485, 77 S.Ct., at 1309. If the play "Che!" is obscene, plaintiffs' conduct is not entitled to the protection of the First Amendment. On the other hand, assuming the play is non-obscene (we certainly intimate no view whatever on that score), the issue arises as to the scope of protection to be afforded plaintiffs' conduct—sodomy—by the First Amendment.

The authority of the State to enact laws "to promote the health, safety, morals and general welfare of its people" cannot be doubted. See Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

■ It is equally clear that not all conduct intermingled with speech is entitled to greater constitutional protection than would be the case if the conduct stood alone. See Cameron v. Johnson, 390 U.S. 611, 617, 88 S.Ct. 1335, 20 L. Ed.2d 182 (1968). As stated by the Supreme Court in Cox v. Louisiana, 379 U.S. 559, 563, 85 S.Ct. 476, 480, 13 L. Ed.2d 487 (1965), "[t]he examples are many of the application by this Court of the principle that certain forms of conduct mixed with speech may be regulated or prohibited." Not every form of conduct must be treated simply as protected "speech." See Grossner v. Trustees of Columbia University, 287 F.Supp. 535, 544 (1968). Rather, "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidential limitations on First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968).

Plaintiffs' argument centers on the fact that the proscription of the statute embraces public acts of consensual sodomy performed as a "part of an artistic whole." In support of their contention that such conduct is protected, plaintiffs rely heavily on Judge Hays' statement in United States v. A Motion Picture Film, 404 F.2d 196, 199 (2 Cir. 1968), that:

> [T]he comparison urged by the government between nudity and sexual activity in a public place and the same matters as portrayed in a motion picture such as "I Am Curious" is far fetched. In the motion picture the material is a part of an artistic whole and is united with and related to the story and the characters which are presented. This is vastly different from a sudden unrelated episode taking place in public.

Most emphatically, we do not construe this statement as establishing that the public performance of acts of sodomy, prohibited by state statute, are entitled to constitutional protection if they supposedly are "part of an artistic whole." The prohibited evil is not thus disguised; it is like pouring cologne on gangrene.

It is a constant source of deep concern whether the alleged contribution to artistic advancement which is claimed for such an "artistic" work in which sodomy on view in public places is part and parcel thereof, is worth the dreadful price of outbursts of criminal deportment which are excited by such stimulation, and community apprehension which inevitably follow.

■ Nor do we find much force to the argument that sodomy performed on stage should be protected inasmuch as such conduct under certain circumstances

---

18. We are not here dealing with private acts of sodomy between unmarried consenting adults, and accordingly, intimate no view as to the constitutionality of the consensual sodomy statute were it sought to be applied to such private conduct.

19. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (April 7, 1969), recognizes an exception for mere private possession of obscene material.

is allowed to be depicted on the screen. *Cf.* Kingsley Pictures Corp. v. Regents of University of State of New York, 360 U.S. 684, 688–689, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959); Excelsior Pictures Corp. v. Regents of the University of the State of New York, 3 N.Y.2d 237, 165 N. Y.S.2d 42, 144 N.E.2d 31 (1957).

■ New York's consensual sodomy statute is not void on its face for "overbreadth." Contra to plaintiffs' belief, it does not penalize constitutionally protected conduct. While conceivably in certain exceptional instances a partial abridgement of speech may result from the regulation of conduct, New York's interest in prohibiting public acts of sodomy on stage warrants the greater protection.

■ Plaintiffs also argue that the statute is "unconstitutional on its face because it invidiously discriminates between married individuals and unmarried individuals."[20] We disagree. Plaintiffs' further statement that "it is criminal for unmarried people to engage in sodomy in public but not for married people to do so" is in error.[21] Public acts of sodomy between married persons would run afoul of New York's public lewdness statute, Penal Law § 245.00.

Plaintiffs' reliance on Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed. 2d 1010 (1968), and McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed. 2d 222 (1964), is misplaced. We are not here faced with a statute which works an invidious racial discrimination in contravention of the Equal Protection Clause.

We believe a rational foundation exists for the state's discrimination between acts of consensual sodomy committed by married and unmarried persons. No matter who the participants are, we emphasize such deportment in public violates the prohibition of the statutes here under consideration.

We see no substantial federal question whatever raised here as to the constitutionality of New York's consensual sodomy statute.

### Prior Restraint

As set out in the beginning of this opinion, plaintiffs were arrested on warrants signed by a New York City Criminal Court judge after he had viewed a performance of the play. Plaintiffs were charged with obscenity, consensual sodomy, public lewdness, disseminating indecent material to minors, and conspiracy; each offense represents a separate and independent violation of New York's Penal Law.

Plaintiffs here urge that the procedure followed in issuing the arrest warrants was constitutionally deficient in that it failed to afford them an adversary hearing on the issue of obscenity prior to their arrests.[22]

■ The Supreme Court has been quite vigilant in upholding the Fourteenth Amendment's requirement that "regulation by the States of obscenity conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line." Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963). The Court has spelled out rather clearly that law enforcement officers cannot seize allegedly obscene publications without a prior adversary proceeding on the issue of obscenity. A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). See Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Bee See Books, Inc. v. Leary, 291 F.Supp. 622 (S.D.N.Y.1968); Poulos v. Rucker, 288 F.Supp. 305 (M.D.

---

20. Plaintiffs' Memorandum, p. 17.

21. Id.

22. While plaintiffs' complaint alleges that seizure of "stage props and scripts, *inter alia*," accompanied their arrests, they do not here contend that such seizure was unconstitutional. They raise no issue as to the seizure of such items prior to an adversary hearing on the issue of obscenity.

Ala.1968) ; United States v. Brown, 274 F.Supp. 561 (S.D.N.Y.1967). While *A Quantity of Books* involved a search and seizure in a civil forfeiture case, the standards there enunciated apply equally to a search and seizure of allegedly obscene materials in a criminal case. United States v. Brown, *supra* at 563; Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky.1968).

Recognizing that motion pictures are as much protected by the constitutional guarantees of freedom of speech and press as are publications,[23] a number of courts have held that an adversary proceeding on the issue of obscenity is required before a film can be constitutionally seized.[24] See Metzger v. Pearcy, *supra*; Cambist Films, Inc. v. State of Illinois, 292 F.Supp. 185 (N.D. Ill.1968) ; Cambist Films, Inc. v. Tribell, *supra;* Tyrone, Inc. v. Wilkinson, 294 F. Supp. 1330 (E.D.Va.1969).

Courts have expressly rejected the contention that the constitutional requirement of an adversary hearing is satisfied by the informal gathering of a judge and prosecuting authorities to view the allegedly obscene film prior to seizure. Cambist Films, Inc. v. State of Illinois, *supra*; Tyrone, Inc. v. Wilkinson, *supra*.[25]

[T]here is no due process, constitutional or otherwise, in such a gathering. * * * by definition the heart of an adversary proceeding before suppression of a medium of expression may be effected, is the opportunity for adversary presentation to ensure that expression will not be suppressed without contest and justification. The absence of a formal adversary proceeding is therefore in fact and in law constitutionally critical. Cambist Films, Inc. v. State of Illinois, *supra* 292 F. Supp. at 188.

Suppression via seizure prior to an adversary hearing is not the only form of prior restraint struck down by the courts as unconstitutional. See Bantam Books, Inc. v. Sullivan, *supra;* Bee See Books, Inc. v. Leary, *supra*. One court has stated that "even in the absence of seizure, threats of criminal prosecution by police officers or other administrative officials can constitute an all too effective prior restraint." Poulos v. Rucker, *supra* 288 F.Supp. at 310. See Bantam Books, Inc. v. Sullivan, *supra* at 67, n. 8, 83 S.Ct. 631. Another held that the "seizure of the film and the related criminal prosecution were undertaken in clear violation of the First Amendment" since no adversary hearing was held on the issue of obscenity. Cambist Films, Inc. v. State of Illinois, *supra* 292 F. Supp. at 187.[26]

**23.** Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) ; Kingsley International Pictures Corp. v. Regents of University of State of New York, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959) ; Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).

**24.** Relying on Marcus v. Search Warrants of Property at 104 East Tenth St., Kansas City, Mo., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), the Supreme Court recently reversed a petitioner's conviction for possessing and exhibiting obscene motion pictures on the ground that the films in question had been unconstitutionally seized. Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968). No reference was made in the opinion to A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

**25.** In *Cambist Films*, prior to the seizure of the film, a state's attorney, a county circuit judge, and a local magistrate viewed the film while it was showing at a local theatre. Thereafter arrest and search warrants were issued by the same local magistrate. In *Tyrone*, the magistrate who issued the search warrant likewise viewed the film prior to the issuance of said warrant.

**26.** The court in *Cambist Films* cites the unreported case of Metzger v. Illinois, Civil No. 67 C 2194 (N.D.Ill., filed June 19, 1968), which involved both the seizure of a film and arrests made without any prior adversary hearing on the question of obscenity. The court in *Metzger* apparently held both the seizure and ar-

Suffice it to say at this point that a substantial federal question is raised as to the constitutionality of a procedure which permits arrests for an obscene performance—here a play—prior to an adversary hearing on the question of obscenity.

That is not to say, however, that plaintiffs are entitled to have a three-judge court convened to consider this question. Not every request for an injunction against state action entitles the complainant to a hearing by three judges. The constitutionality of a state statute or of its application must be in issue before a party may come on before the special court envisioned by 28 U.S. C. § 2281. Here plaintiffs merely attack the constitutionality of the procedure culminating in their arrests. Contrast Evergreen Review, Inc. v. Cahn, 230 F. Supp. 498 (E.D.N.Y.1964). We find no merit to plaintiffs' contention that the procedure they denounce renders the obscenity, consensual sodomy and public lewdness statutes unconstitutional on their face. Accordingly, the substantial federal question as to procedure herein raised does not warrant the convening of a three-judge court. This Court sitting alone may rule on the merits of that issue. 42 U.S.C. § 1983.

We do not resolve the merits of that contention, however, for we regard this a proper case in which to abstain from exercising jurisdiction. Plaintiffs have been arrested for five offenses under New York's Penal Law. Obscenity is only one of the offenses charged. Assuming, *arguendo*, the need for an adversary hearing prior to arrest for obscenity, such hearing is not required where the arrest is for consensual sodomy or public lewdness. Plaintiffs' arrests for the latter two offenses occurred only after a judge who viewed

the offensive conduct signed arrest warrants. Any restraint [27] plaintiffs are presently experiencing stems as much from their fear of further arrests for sodomy and lewdness as from their fear of additional arrests for obscenity. Viewed in this light, the cogent reason for *not* abstaining when First Amendment rights are involved is not present here. See Zwickler v. Koota, 389 U.S. 241, 252, 88 S.Ct. 391, 19 L.Ed. 2d 444 (1967).

Additionally, we note the long standing rule that federal courts should be slow to interfere with pending state criminal prosecutions. See Zwickler v. Koota, *supra*; Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). Such rare intrusions upon the state criminal process are permissible only "in those exceptional cases" where intervention is required "to prevent irreparable injury which is clear and imminent." Douglas v. City of Jeannette, *supra* at 163, 63 S.Ct., at 881. A showing of " 'special circumstances' beyond the injury incidental to every proceeding brought lawfully and in good faith is requisite to a finding of irreparable injury sufficient to justify the extraordinary remedy of an injunction." [28] Cameron v. Johnson, 390 U.S. 611, 618, 88 S.Ct. 1335, 1339, 20 L.Ed.2d 182 (1968).

Further, we believe that the pending state court prosecutions will afford prompt determination of plaintiffs' constitutional claim.

Accordingly, this Court abstains from exercising jurisdiction.

### Bad Faith Application

In their complaint, plaintiffs make the broad allegations that their pending state prosecutions are "without any basis in fact and law" and are being brought solely for the purpose of depriving them

---

rests to be unlawful. 292 F.Supp. at 190. There is no indication as to whether it found the film there in question not obscene as did the court in *Cambist Films.*

27. See note 7, *supra.*

28. These considerations stand apart from the question of whether a claim for relief under 42 U.S.C. § 1983 surmounts the obstacle of 28 U.S.C. § 2283.

of rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States. Faced with similar assertions, it was held recently that "[i]f these totally conclusory allegations were in any way supported by factual allegations, the 'chilling effect' rationale of *Dombrowski* would merit the convening of a three-judge court to give further consideration to plaintiffs' complaint." Johnson v. Lee, 281 F.Supp. 650, 656 (D.C., 1968). Just as in that case, plaintiffs here "utterly fail to offer anything in the way of factual allegations or support." *Id.*

■ Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) presented a situation of the "impropriety of [state officials]. invoking the statute in bad faith to impose continuing harassment in order to discourage appellants' activities * * *." *Id* at 490, 85 S.Ct. at 1123; Cameron v. Johnson, *supra* at 619, 88 S.Ct. 1335. There is absolutely nothing before this Court to indicate that such tactics are being resorted to here. On the contrary, plaintiffs' own complaint discloses that their arrests occurred only after a criminal court judge signed arrest warrants after viewing an evening performance of "Che!" Plaintiffs' unsupported conclusory allegations of "selective enforcement of the statutes" is equally unpersuasive.

We are satisfied that plaintiffs were arrested and are being prosecuted in good faith for violations of New York's Penal Law. They have not raised a substantial federal question with respect to the application of the statutes here involved.

### Conclusion

For all the above reasons, plaintiffs' motion to convene a three-judge court pursuant to 28 U.S.C. § 2281 and 2284 and for the issuance of a temporary restraining order must be denied. Construing their motion as also seeking declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C.

§ 1983, that request too is denied. Plaintiffs' complaint is dismissed.

Defendants' motion to dismiss the complaint is granted.

So ordered.