BEE SEE BOOKS INC. and V. I. P. Novelties Inc., Plaintiffs,

v.

Howard LEARY, Police Commissioner of the City of New York, Defendant.

No. 68 Civ. 3790.

United States District Court
S. D. New York.

Oct. 23, 1968.

Flaum, Growman, Sassower, Rosenberg & Postel, New York City, for plaintiffs; Emanuel Growman, Harold Bofshever, New York City, of counsel.

J. Lee Rankin, Corp. Counsel of the City of New York, for defendant; James M. Brachman, Asst. Corp. Counsel, of counsel.

OPINION

FREDERICK van PELT BRYAN, District Judge:

This is an action pursuant to 42 U.S.C. § 1983 to enjoin defendant Police Commissioner of the City of New York from regularly and continuously stationing uniformed policemen in plaintiffs' book stores. Plaintiffs' principal contention is that this course of conduct constitutes an unconstitutional restraint on the distribution and sale of books, magazines, pictures and movies sold in their stores

in violation of the First and Fourteenth Amendments. Plaintiffs move for a preliminary injunction.

There seems to be little dispute as to the facts. Each plaintiff has a book store on West 42nd Street. Like many other book stores in that area, they deal primarily in books, magazines, pictures and movies of questionable taste with little, if any, literary or artistic merit. Defendant Commissioner has submitted to the court a series of photographs acquired from plaintiffs' stores which depict in the baldest terms acts of sexual intercourse and sodomy. There is no doubt in my mind that by any standards these photographs are hard core pornography and are not entitled to First Amendment protections. See Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Plaintiffs do not deny that they have sold such items.

However, it is conceded by the defendant Commissioner that the books, magazines and pictures which are openly displayed in plaintiffs' stores do not fall within the category of hard core pornography and are not proscribed by the New York Obscenity Laws. N.Y.Penal Law, § 235.00 et seq. It is alleged that any hard core pornography is kept concealed and is sold only under the counter.

According to the uncontradicted affidavit of First Deputy Police Commissioner Walsh, Judges of the Criminal Court of the City of New York have from time to time issued warrants for the search of plaintiffs' book stores, and pursuant to such warrants the police have seized a quantity of what are apparently hard core pornographic items.

Eleven employees in the plaintiffs' stores have been arrested on a number of occasions during the past two years, including last August, for selling pornographic items in violation of the New York Obscenity statute. Plaintiffs state that "Plaintiff's employees have found it much easier and more economical to plead guilty and pay the fine rather than hire counsel and defend themselves."

In August 1968, instead of making further arrests or obtaining warrants from the Criminal Court, the police consulted the office of the Corporation Counsel of the City of New York "as to how sales of hard core pornography could be properly detected and prevented." The Corporation Counsel's office advised "that it would be proper to post police officers in book stores where the officers would not interfere with patrons leaving or entering the premises and where the officers would not interfere with the conduct of business in items which were not hard core pornography." The Corporation Counsel's office also advised the police it was of the opinion that certain items which had been on sale at plaintiffs' book stores were obscene within the meaning of the New York Obscenity Law.

Commencing on September 10, 1968 uniformed officers were stationed in the store of each plaintiff. The officers so stationed were instructed that

"(a) They should be alert at all times, both inside and outside the stores, to prevent traffic in hard core pornography, particularly photographs and magazines showing sodomy, masturbation and sexual intercourse.

"(b) They should make arrests for the sale or delivery of hard core pornography and seize the evidence when making such arrests.

"(c) They should not interfere with patrons leaving or entering the premises."

Beginning on September 10, 1968, a uniformed policeman appeared on the premises of each of the plaintiffs' stores when they opened and he or a relieving uniformed officer remained on the premises until closing time. The officer on duty stood in the doorway of the store and from time to time entered the store and stood or sat there in full view of patrons. This went on every day during the time the store was open from September 10th forward. The officers have refused to explain their presence to store employees, simply stating they are

there "under orders." Apparently the surveilling officers have made no arrests or seizures during these tours of duty.

Deputy Commissioner Walsh states that there are 47 book stores in the Times Square area which deal in material similar to that sold by plaintiffs. It is the intention of the police to institute similar surveillance in the other stores "as departmental resources permit."

According to plaintiffs' affidavits, prior to this police surveillance each of the stores had daily average receipts of approximately $500. Following the stationing of police in the stores in the manner described receipts have fallen to approximately $250 per day. Plaintiffs claim that they cannot continue to operate their stores on this financial basis and that they will therefore be forced out of business by the continuing police surveillance.

Plaintiffs contend that the constant presence of uniformed police in their book stores is a prior restraint upon their distribution of books, magazines, pictures and movies in violation of the First and Fourteenth Amendments. They say that many patrons will not enter their stores at all while a uniformed policeman is there, and others who enter will not buy in fear of the police or because they are under the impression that these are "raided" or off limits premises. They say that this is in effect censorship without any of the procedural safeguards required by the Constitution and violates First Amendment rights of free expression.

Plaintiffs base jurisdiction on 42 U.S. C. § 1983, which, broadly speaking, invests federal district courts with authority to hear suits based on violations of constitutional rights, privileges or immunities by a person acting under color of any statute, ordinance, regulation, custom, or usage, of any state or territory. In light of the nature of the activities questioned in this suit, defendant does not challenge the power of this court to pass on the issues.

However, defendant urges the court to abstain from exercising jurisdiction and to remit plaintiffs to their remedies in the state courts. It is plain that abstention is inappropriate under the present circumstances. The Supreme Court has recently directed that abstention be invoked by the federal courts only in "narrowly limited 'special circumstances.'" Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Litigants are not to be sent to state courts to obtain relief for deprivation of their constitutional rights simply because state courts have jurisdiction, concurrent with federal courts, to grant the requested relief. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Zwickler teaches that the reasons for not abstaining take on particular significance when First Amendment rights are involved. "To force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." 389 U.S. at 252, 88 S.Ct. at 397. See Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

Moreover, this is not a case where the federal courts are asked to enjoin threatened state criminal prosecutions. Zwickler recognized that federal courts are and should be slow to interfere with such threatened prosecutions. 389 U.S. at 253, 88 S.Ct. 391. See Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). At least where state prosecutions are threatened, the complainant is afforded opportunity for the prompt determination of his constitutional claim. There is less danger that the additional burdens of time and expense attendant upon remission to state courts will themselves frustrate effective protection of plaintiffs' constitutional rights. However, in the case at bar where no criminal proceedings have been initiated, whatever advantages, if any, there may be in abstention are plainly outweighed by the dangers to

free speech which might result from delay accompanying state proceedings.

Defendant Commissioner points to Dale Book Company v. Leary, 389 F.2d 40 (3d Cir. 1968), a post-*Zwickler* case involving First Amendment issues, to support his plea for abstention. Assuming that case is consistent with *Zwickler*, it does not aid defendant. *Dale Book* involved an attempt to enjoin threatened state criminal prosecutions, a situation which *Zwickler* recognized as sometimes appropriate for abstention. The situation is quite different from that in the case at bar where no prosecutions are pending and indirect censorship without prosecution is charged.[1]

I turn then to the merits.

█ It is plain that obscenity is not protected by the First Amendment. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

However, the line between publications barred from constitutional protection because it is obscene and material which is constitutionally protected cannot be drawn with any precision. As Judge Moore pointed out in United States v. One Carton Positive Motion Picture Film, 367 F.2d 889 (2d Cir. 1966), despite the fourteen opinions in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1; Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 969, 16 L.Ed.2d 31; and Mishkin v. State of New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56, "The 'fog in which guides and landmarks appear only dimly and obscurely from time to time' * * * has not lifted appreciably." Constitutionally protected expression "is often separated from obscenity only by a dim and uncertain line." Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

█ In view of the inherent difficulties in drawing the "dim and uncertain line" between constitutionally protected expression and obscenity and the grave danger to free speech presented by unfettered discretion in applying the *Roth* test, the Constitution requires that any restraints on the distribution of publications on the ground that they are obscene, can only be imposed after an adversary judicial proceeding on the question of obscenity. A Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

The Supreme Court has on several occasions declared unconstitutional attempts at indirect censorship effectuated by means other than a full judicial hearing. In *Bantam Books*, supra, the Rhode Island Legislature had created a commission to investigate violations of the state obscenity statutes and to recommend prosecution of all violations. In an effort to curtail publication without the instigation of criminal proceedings the Commission notified distributors that it considered certain material objectionable. The court found the Commission's activities unconstitutional saying:

"Thus, the Fourteenth Amendment requires that regulation by the States of obscenity conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line. It is characteristic of the freedoms of expression in general that they are vulnerable to gravely damaging yet barely visible encroachments. Our insistence that the regulations of obscenity scrupulously embody the most rigorous procedural safeguards, Smith v. [People of State of] California, 361 U.S. 147 [, 80 S.Ct. 215, 4 L.Ed.2d 205;] Marcus v. Search Warrants, etc., supra, [367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127] is

---

1. It may be noted that although the Third Circuit expressly approved the trial court's decision to abstain, this was done only after finding that the appeal had

been rendered moot by termination of the state criminal proceedings in appellant's favor.

therefore but a special instance of the larger principle that the freedoms of expression must be ringed about with adequate bulwarks. * * *

"But, it is contended, these salutary principles have no application to the activities of the Rhode Island Commission because it does not regulate or suppress obscenity but simply exhorts booksellers and advises them of their legal rights. This contention, premised on the Commission's want of power to apply formal legal sanctions, is untenable. It is true that appellants' books have not been seized or banned by the State, and that no one has been prosecuted for their possession or sale. But though the Commission is limited to informal sanctions— the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation—the record amply demonstrates that the Commission deliberately set about to achieve the suppression of publications deemed 'objectionable' and succeeded in its aim. We are not the first court to look through the forms to the substance and recognize that informal censorship may sufficiently inhibit the circulation of publications to warrant injunctive relief." Id. 372 U.S. at 66–67, 83 S. Ct. at 638.

In Marcus v. Search Warrants, etc., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), police officers, pursuant to a search warrant, seized material which they considered obscene. The search warrant had been issued upon the complaint of a police official which stated that he had personal knowledge that obscene material was being kept at defendants' premises. No samples of the allegedly obscene material were submitted to the Circuit Judge. In executing the warrant the officers determined for themselves which magazines were and which were not obscene. The Supreme Court unanimously declared unconstitutional the challenged procedure, on the

grounds inter alia, that the state court had obviously left the determination as to obscenity to the unfettered discretion of the seizing officers.

In A Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), the court struck down a Kansas procedure by which a search warrant was issued pursuant to a court's initial ex parte determination of obscenity. Only after ten days was the book dealer afforded an adversary hearing on the question of obscenity. The court held that before any warrant could issue, the complainant was entitled to an adversary hearing on the obscenity issue. "For if seizure of books precedes an adversary determination of their obscenity, there is danger of abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books." Id. at 213, 84 S.Ct. at 1727.

■ I am of the view that the challenged activities of the police in the case at bar do not meet constitutional standards imposed by the First Amendment for enforcement of State Obscenity Laws. The constant presence of uniformed officers in plaintiffs' book stores, in full view of patrons, is plainly a restraint on the distribution of the publications which plaintiffs sell. It is conceded that a substantial part of the printed and visual matter sold in these two stores does not fall within the proscription of the obscenity laws and therefore is constitutionally protected material. The effect of the constant presence of the officer in full uniform under these circumstances is to indicate to patrons of plaintiffs' stores that any material sold in the stores is illegal and that any purchases may lead to prosecution. This is necessarily advance censorship without any of the protections afforded by such civil injunctive procedures as were held constitutionally permissible in Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1956),[2] and

---

2. § 22–a of the New York Code of Criminal Procedure, upheld in Kingsley Books, provided:

"§ 22–a. Obscene prints and articles; jurisdiction. The supreme court has jurisdiction to enjoin the sale or distribu-

Alberts v. State of California, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), or by the usual processes of the criminal law.

There is little doubt that the challenged activities of the police are an effective restraint on distribution of publications sold by plaintiffs. Plaintiffs' sales since the stationing of officers began has been reduced by one-half. There is no explanation for this other than the presence of the uniformed officers. Moreover, the circumstances indicate that surveillance was initiated for the purpose of inhibiting the distribution of material by the plaintiffs rather than to detect and gather evidence of sales in violation of the New York obscenity statute. If the prime purpose was crime detection and prosecution it would seem that plainclothesmen rather than uniformed policemen would serve the purpose better.

There is here an effective restraint on distribution of publications without any of the "rigorous procedural safeguards" which must be scrupulously observed in the regulation of obscenity. Bantam Books, Inc. v. Sullivan, supra. Implicit in the constant presence of the uniformed officers on plaintiffs' premises are threats of imposing legal sanctions and other means of coercion, restraint and intimidation against the distribution of numerous publications which have not

been found to be obscene and which may not fall into that category. The restraints here are different from those in *Bantam Books* but are no less effective. Indeed, they may be said to go farther since they are not directed at any specific publications but affect the whole stock on sale in these stores, the bulk of which concededly does not fall within the proscribed category.

Plainly the police are faced with a difficult situation and I am reluctant to interfere with them in the performance of their duties. Yet, the activities of the police in enforcing the obscenity laws, however worthy their objectives, must conform to procedures that will insure against the curtailment of constitutionally protected expression. This they do not do.

I hold, therefore, that on the record before me the activities of the police here constitute a restraint upon freedom of expression in violation of the First and Fourteenth Amendments.

I hold further that the plaintiffs have shown that irreparable damage is likely to result from the continuation of such activities.

I know of no way in which plaintiffs could secure compensation in money damages for the very substantial drop in sales which has occurred since surveillance began and for being forced out

tion of obscene prints and articles, as hereinafter specified:

"1. The chief executive officer of any city, town or village or the corporation counsel, or if there be none, the chief legal officer of any city, town, or village, in which a person, firm or corporation sells or distributes or is about to sell or distribute or has in his possession with intent to sell or distribute or is about to acquire possession with intent to sell or distribute any book, magazine, pamphlet, comic book, story paper, writing, paper, picture, drawing, photograph, figure, image or any written or printed matter of an indecent character, which is obscene, lewd, lascivious, filthy, indecent or disgusting, or which contains an article or instrument of indecent or immoral use or purports to be for indecent or immoral use or purpose; or in any other respect

defined in section eleven hundred forty-one of the penal law, may maintain an action for an injunction against such person, firm or corporation in the supreme court to prevent the sale or further sale or the distribution or further distribution or the acquisition or possession of any book, magazine, pamphlet, comic book, story paper, writing, paper, picture, drawing, photograph figure or image or any written or printed matter of an indecent character, herein described or described in section eleven hundred forty-one of the penal law.

"2. The person, firm or corporation sought to be enjoined shall be entitled to a trial of the issues within one day after joinder of issue and a decision shall be rendered by the court within two days of the conclusion of the trial."

of business if that probability should occur. Moreover, the very nature of the restraints which have been imposed here give rise to the danger that "* * * free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser." Dombrowski, supra, 380 U.S. at 486, 85 S.Ct. at 1121.

An order will issue enjoining the defendant Commissioner from stationing uniformed officers in plaintiffs' stores on a regular and continuing basis.

Settle order on notice.