Eugene MAGUIN, on behalf of himself
and all others similarly
situated, Plaintiffs,

v.

Vern MILLER, District Attorney, Kansas
Eighteenth Judicial District, and Rich-
ard LaMunyon, Chief of Police, Wichita,
Kansas Police Department, Defendants.

NEXT DOOR CINEMA CORPORATION,
d/b/a Calico Cat Cinema, and Starr En-
terprises, Inc., d/b/a Circle Cinema,
Plaintiffs,

v.

Vern MILLER, Individually, and as Dis-
trict Attorney, Kansas Eighteenth Judi-
cial District, Stephen M. Joseph, Individ-
ually, and as Assistant District Attorney,
Kansas Eighteenth Judicial District,
Richard LaMunyon, Individually, and as
Chief of Police, Wichita, Kansas, Nolan
E. Spruill, Steven D. Trainer, and Larry
Sanford, Individually, and as members of
the Wichita Police Department, Sedg-
wick County, Kansas, and the City of
Wichita, Kansas, Defendants.

Civ. A. Nos. 77-1076, 77-1118.

United States District Court,
D. Kansas.

June 10, 1977.

Michael D. Gragert of Hiebsch, Robbins
& Tinker, Wichita, Kan., for Maguin.

John H. Weston of Fleishman, Brown,
Weston & Rohde, Beverly Hills, Cal., and
James M. Glover, Wichita, Kan., for Next
Door Cinema Corp. and Starr Enterprises,
Inc.

Theodore H. Hill, R. K. Hollingsworth, James W. Pattinson, Wichita, Kan., for Sedgwick County, Kansas.

Stephen M. Joseph, Asst. Dist. Atty., Wichita, Kan., pro se and for Vern Miller.

S. A. Issinghoff and Gary E. Rebenstorf, Asst. City Attys., Wichita, Kan., for LaMunyon, Spruill, Trainer, Sanford and City of Wichita.

### ORDER ON MOTIONS FOR TEMPORARY INJUNCTION AND FOR RESTRAINING ORDER

WESLEY E. BROWN, Chief Judge.

These actions, consolidated for hearings upon motions for temporary restraining orders, arise from the efforts of Vern Miller, District Attorney for the Kansas Eighteenth Judicial District, and the Wichita Police Department, to enforce the Kansas obscenity law, K.S.A. 1976 Supp. 21–4301, prohibiting the promotion of obscenity, a class A misdemeanor.

Injunctive relief and money damages are sought under provisions of the Civil Rights statutes, 42 U.S.C. §§ 1983, 1985, 1986, by two "adult" movie theatres (plaintiffs Next Door Cinema and Starr Enterprises, Case No. 77–1118), and a patron of such movie theatre (plaintiff Eugene Maguin, Case No. 77–1076) to enjoin and redress alleged violations of constitutional rights under the First, Fourth, Fifth and Ninth Amendments which occurred during various "raids" by police officers upon the two adult movie theatres in Wichita, Kansas during January and February of this year.

During the hearing upon the motions for preliminary injunctive relief, the parties were able to agree to the basic factual matters concerning the various procedures undertaken by police officers in connection with the seizure of films by law enforcement officers. Upon the basis of the allegations of the complaints which are uncontroverted, the stipulations of the parties during hearing, and exhibits offered at the hearing, the basic facts giving rise to these actions are as follows:

*Eugene Maguin, et al. v. Vern Miller, et al., Cause No. 77–1076*

On January 21, 1977, plaintiff Eugene Maguin attended the Circle Cinema, an adult movie theatre in Wichita, Kansas, as a paying customer. Two movies were being shown on that evening, one titled "Gloria Comes Home;" the other, "The Devil in Miss Jones." Maguin attended the theatre for the purpose of viewing "The Devil in Miss Jones." At approximately 8:30 p. m. police officers entered the theatre, stopped the showing of "Gloria Comes Home," and seized the film. (Exhibit B). In addition, plaintiff, and other patrons of the theatre, were restrained of their liberty and told they would not be permitted to leave the theatre until they divulged their identity. Police officers were stationed at exits to the theatre, and plaintiff Maguin and other patrons were subjected to interrogation and compelled to divulge their names and addresses and other personal information before being permitted to leave the premises. The names and addresses of 21 patrons were taken on this occasion.[1]

In addition to the seizure of one film, "Gloria Comes Home," and the taking of the names and addresses of patrons attending the theatre, police officers also seized ticket stubs, $250.00 cash on hand, and physically arrested the one employee on duty.

The search and seizure at the Circle Cinema on January 21, 1977, were conducted pursuant to a search warrant executed by Judge Robert T. Stephan, of the District Court for the Eighteenth Judicial District, State of Kansas, at 7:30 p. m. on that date, after he had personally viewed the film "Gloria Comes Home." (Exhibit B). Pursuant to this warrant, Judge Stephan found probable cause to believe that "the offense of promoting obscenity, K.S.A. 1976 Supp. 21–4301" had been committed, and authorized the seizure of the following items from the premises in question:

1. Exhibit 1, Second Amended Complaint, Case No. 77 CR 217, *State of Kansas v. Star* (sic.) *Enterprises, Inc., et al.,* Sedgwick County, Kansas, 18th Judicial District.

"One Motion picture film entitled 'Gloria Comes Home;'

"The names and addresses of all persons viewing those (sic) motion picture films; and

"Tickets, ticket stubs, and money derived from the sale of tickets for admission to view those (sic) motion picture films."

The plaintiff Eugene Maguin brings this action for himself, and as a class action for all others similarly situated, that is, "all other current and future patrons of adult movie theaters located within Wichita, Kansas."

Plaintiff Maguin alleges that his rights under the First, Fourth, Fifth and Ninth Amendments have been violated. In particular he contends that acts harassing patrons of movies which have not yet been judicially determined to be obscene, constitute unlawful prior restraint, and creates a chilling effect on his exercise of first amendment rights of expression and assembly; that defendants' acts amount to punishment of plaintiff because of his viewer participation in the exhibition of films which defendants deem, without judicial determination, to be obscene; that the acts of defendants constitute an invasion of privacy and an unlawful attempt to restrict the "spectrum of knowledge" available to plaintiff; and that under the circumstances presented, the act of detaining and interrogating plaintiff, constituted an unreasonable search and seizure. Maguin seeks preliminary and permanent injunctions against defendants, prohibiting the detention, interrogation, and other harassing activities against patrons of adult movie theatres who are exercising their first amendment rights.

*Next Door Cinema Corp., et al. v. Vern Miller, et al., Cause No. 77–1118*

This suit was brought by the operators of two adult movie theatres in Wichita, Kansas—plaintiffs Next Door Cinema Corp., d/b/a Calico Cat Cinema, and Starr Enterprises, Inc., d/b/a Circle Cinema, for injunctive relief and money damages under the Civil Rights Act, 42 U.S.C.A. §§ 1983, 1985.

The defendants in this action are Vern Miller, individually and as District Attorney, 18th Kansas Judicial District; Stephen M. Joseph, Assistant District Attorney; Richard LaMunyon, Chief of Police and Officers Spruill, Trainer and Sanford, officers of the Wichita Police Department; Sedgwick County, Kansas; and the City of Wichita.

By separate Order of this date, the defendants Stephen M. Joseph and Sedgwick County, Kansas have been dismissed as parties defendant in this action.

The affidavits of Clark and Brislawn (Dkts. 2, 3, 4) were submitted by plaintiff theatres in support of their complaint and motion for preliminary injunctive relief. According to these affidavits, which were uncontroverted by defendants, the following factual summary may be made of defendants' activities:

Since January 21, 1977, the Calico Cat Theatre has been the subject of one seizure of films, and the arrest of one employee, and the Circle Cinema has been the subject of seven seizures of films, with the concurrent arrest of four employees of that theatre. Additionally one summons was issued to an employee of the Circle Cinema, in lieu of physical arrest.

Both the Calico Cat Theatre and the Circle Cinema are motion picture theatres, exhibiting films to adults only.

The dates of the various seizures, and titles of the films seized are as follows:

| | | |
|---|---|---|
| January 21, 1977 | Circle Cinema | "Gloria Comes Home" |
| January 21, 1977 | Calico Cat | "Memories Within Miss Aggie" "Youthful Lust" |
| January 81, 1977 | Circle Cinema | "Affair in the Air" "Ghost Town" |
| February 5, 1977 | Circle Cinema | "Devious Girls" "Love Lips" "Lady Freaks" |
| February 15, 1977 | Circle Cinema | "Marriage and Other 4–Letter Words" "Little Angel Puss" |
| February 22, 1977 | Circle Cinema | "Little Angel Puss" |
| March 15, 1977 | Circle Cinema | "Fireworks Woman" "Midnight Hustle" |

At the time of the seizures, employees of the theatre were physically arrested and removed from the premises on January 21, February 5, and February 15, 1977. Each

theatre was staffed by a single employee, and as a result of these arrests, the theatres were left completely unattended for periods of time ranging from two to twelve hours, and the operations of the theatres were completely halted, for no tickets could be issued and no films could be exhibited to customers during such times.

One summons was issued on or about February 1, 1977, directed to an employee of the Circle Cinema on the basis of the seizure on those premises on January 31, 1977.

On each occasion of seizure and arrest—January 21, February 5, and February 15, 1977—patrons of the theatres were required by law enforcement officers to leave the theatre prior to the completion of the program, and on two occasions, the detained employee was prohibited by the officers from refunding the price of admission to patrons, even though patrons made demand for refund of the price of their tickets.

On at least four occasions—January 21 at both theatres, February 5, and February 15, 1977—police officers seized tickets and ticket stubs, thereby depriving the theatres of the means of accounting for receipts or of issuing tickets for admittance to the theatres, until new ticket rolls could be obtained.

On at least four occasions, under dates mentioned above, police officers seized all money located on the premises, thereby depriving the theatres of money necessary to make change, purchase supplies, and to operate their businesses.

On at least four occasions, the seizures of January 21, February 5, and February 15, police officers did detain the customers of the theatres until each had stated aloud his name and address. Patrons who were so detained expressed their distress, displeasure and objection to being subjected to this detention and procedure.

In connection with the seizures on January 21, 1977, 53 names and addresses were taken at the Calico Cat Cinema, and 21 names and addresses were taken at the Circle Cinema. During the seizure of February 5, 1977, 43 names and addresses were taken at the Circle Cinema. (Exhibit 1).

Since the seizures by police officers commenced on or about January 21, 1977, the box office receipts of both theatres have declined substantially. The following is a compilation of receipts for each theatre prior and subsequent to the seizures: (Aff. Clark, Dkt. 2)

| WEEK ENDING | CIRCLE CINEMA | CALICO CAT CINEMA |
|---|---|---|
| 11/2/76 | $ 6,772.00 | $ 5,924.00 |
| 11/9/76 | 3,975.00 | 6,096.00 |
| 11/16/76 | 4,092.00 | 5,880.00 |
| 11/23/76 | 4,565.00 | 5,021.00 |
| 11/30/76 | 4,686.00 | 4,611.00 |
| TOTAL NOVEMBER | $ 24,040.00 | $ 27,532.00 |
| 12/7/76 | $ 5,980.00 | $ 4,991.00 |
| 12/14/76 | 4,913.00 | 5,385.00 |
| 12/21/76 | 5,779.00 | 5,690.00 |
| 12/28/76 | 4,690.00 | 5,346.00 |
| TOTAL DECEMBER | $ 21,312.00 | $ 21,412.00 |
| 1/4/77 | $ 6,504.00 | $ 5,533.00 |
| 1/11/77 | 4,013.00 | 4,332.00 |
| 1/18/77 | 4,175.00 | 4,715.00 |
| 1/25/77 | 1,874.00 | 694.00 |
| TOTAL JANUARY | $ 16,566.00 | $15,274.00 |
| 2/1/77 | $ 2,778.00 | . . . |
| 2/8/77 | 1,854.00 | . . . |
| 2/15/77 | 2,294.00 | . . . |
| 2/22/77 | 1,845.00 | . . . |
| TOTAL FEBRUARY | $ 8,771.00 | |

The Calico Cat Cinema was closed at the end of January 1977, and was thereafter destroyed by fire about March 5, 1977.

All of the seizures described above were conducted pursuant to search warrants executed by an appropriate Judge of the Eighteenth Judicial District, State of Kansas. (Exhibit 1). Various criminal proceedings are presently pending against the owners and employees of the two theatres who are charged with promoting obscenity, a Class A misdemeanor, contrary to K.S.A. 1976 Supp. § 21–4301.[2] At the time of hearing

---

**2.** K.S.A. 21–4301 provides in pertinent part that:

> "(1) Promoting obscenity is knowingly or recklessly: (a) Manufacturing, issuing, selling, giving, providing, lending, mailing, delivering, transmitting, publishing, distributing, circulating, disseminating, presenting, exhibiting or advertising any obscene material;

> . . .

> \* \* \* \* \* \*

> "(2)(a) Any material or performance is 'obscene' if the average person applying con-

in this court, no convictions had been obtained upon these complaints, and no film seized at the times described above has been judicially determined to be "obscene" under Kansas law.

In the initial complaints instituting criminal proceedings in the Kansas Eighteenth Judicial District, one officer of the Wichita Police Department was listed as a witness for the prosecution, and no names of the patrons taken at the theatres were listed as witnesses. Under the law of Kansas, the names of witnesses for the prosecution must be endorsed upon the complaint. On April 31, [*sic*] after these actions were filed, and just prior to hearing upon the motions for preliminary injunctions, the State of Kansas amended its complaints by listing thereon the names and addresses of each patron taken during the seizures described above. (Exhibits A, E, and 1, Second Amended Complaint, *State of Kansas v. Star Enterprises, Inc.,* (sic) Case No. 77 CR 217, 18th Judicial District of Kansas, Sedgwick County). At the hearing for preliminary injunction, the State did not represent that it in fact intended to call any of these persons as witnesses in the pending prosecutions.

It was stipulated at the hearing that defendants' procedures in seizing films were changed in mid-February. Under these current procedures, a police officer first views the film, makes complaint before a magistrate or judge, and a warrant is issued for the seizure of the film. The film is then brought before a judge who views it personally for the purpose of making a finding of "probable cause." In this manner, only the film in question is seized, no "raid" is conducted upon the premises, tickets and money have not been seized, and it was stipulated that no names of patrons have been taken since February 15, 1977.[3] However, at the hearing, counsel for defendants was unable to affirmatively state that prior procedures would not be re-instituted by defendants in the future.

In these actions, defendants have admitted the allegations pertaining to the seizures in question, but contend that:

a) The principles of comity and federalism require the Court to abstain from hearing this action;

b) That since the seizure of patrons' names and addresses, together with the films, tickets, and money, were done pursuant to lawful search warrants, the defendants are immune from liability; and

c) That any acts committed by the defendants were reasonable, in good faith, and based upon probable cause.

With reference to the contention that this court is precluded from exercising jurisdiction by the principles of "equitable restraint" set out in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), we first observe that in these cases, no plaintiff seeks injunctive relief or order which would enjoin state criminal proceedings. In particular, plaintiff Maguin is not the subject of any court proceeding whatsoever, and the injunctive relief sought by plaintiff theatres is wholly prospective in nature insofar as it pertains to taking names of patrons and seizure of property which effectively "closes down" their premises, prior to any adversary judicial determination of guilt under the Kansas obscenity statute. The Supreme Court again ruled on April 20, 1977, that "*Younger* principles

temporary community standards would find that such material or performance, taken as a whole, appeals to the purient interest; that the material or performance has patently offensive representations or descriptions of ultimate sexual acts, normal or perverted; and that the material or performance, taken as a whole, lacks serious literary, educational, artistic, political or scientific value."

In *State v. Motion Picture Entitled "The Bet,"* 219 Kan. 64, 66, 69, 78, 547 P.2d 760, the Kansas Supreme Court determined that definitions of "obscenity" were subject to judicial construction, and would be construed in a manner consistent with guidelines set by the United States Supreme Court.

Under Kansas law, a Class A misdemeanor is punishable by confinement in the county jail, not to exceed one year, and/or fine not to exceed $2,500.00. K.S.A. §§ 21–4502, 21–4503.

**3.** Exhibit 1, offered by defendants, contains copies of warrants and complaints issued under former, and present procedures.

aside, a litigant is entitled to resort to a federal forum in seeking redress under 42 U.S.C.A. § 1983 for an alleged deprivation of federal rights." *Wooley v. Maynard,* —— U.S. ——, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977).

■ While obscenity is not protected by the First Amendment, the United States Supreme Court has consistently stated that procedures by which a state enforces its obscenity laws must be sensitive at all times to protection of first amendment rights otherwise involved. Thus, "(t)he setting of the bookstore or the commercial theatre" is "presumptively under the protection of the First Amendment," *Roaden v. Kentucky,* 413 U.S. 496, 504, 93 S.Ct. 2796, 2801, 37 L.Ed.2d 757, 764 (1973), and motion picture films frankly depicting nudity and sexual activity are presumed to be protected by the First Amendment until judicially determined to be obscene in an adversary proceeding. *Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973).

■ The courts have consistently recognized that book stores, theatres and other establishments *presumptively* under the protection of the First Amendment are not to be subjected to "police raids" or "closed down" and "padlocked" as common nuisances such as premises used for gambling, prostitution, or other such unlawful·activities. See *State v. Motion Picture Entitled "The Bet,"* 219 Kan. 64, 76–77, 547 P.2d 760 (1976); *Marcus v. Search Warrant of Property,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); *A Quantity of Books v. Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

The courts have likewise condemned more sophisticated efforts to impose unlawful prior restraint upon the exercise of the First Amendment rights, such as censorship boards and licensing requirements. *Bantam Books v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); *Freedman v. State of Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *Southeastern Promotions, Ltd. .y. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Southeastern Promotions, Ltd. v. Oklahoma City,* *Okl.,* 459 F.2d 282 (10 Cir. 1972). In *Southeastern Promotions,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448, which involved a refusal by the City Commissioners of Chattanooga to permit the use of city facilities for the showing of the rock musical "Hair," the Supreme Court ruled that the rejection of the application to use public facilities "accomplished a prior restraint under a system lacking in constitutionally required minimal procedural safeguards." The Court noted, at pp. 552, 553 of 420 U.S., at pp. 1243, 1244 of 95 S.Ct., at pp. 455, 456 of 43 L.Ed.2d, that:

"Respondents' action here is indistinguishable in its censoring effect from the official actions consistently identified as prior restraints in a long line of this Court's decisions . . .

\*    \*    \*    \*    \*    \*

"Invariably, the Court has felt obliged to condemn systems in which the exercise of such authority was not bounded by precise and clear standards. The reasoning has been, simply, that the danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use. Our distaste for censorship—reflecting the natural distaste of a free people—is deep-written in our law."

In *Cinema Classics, Ltd. v. Busch,* 339 F.Supp. 43 (C.D.Cal.1972), *affirmed,* 409 U.S. 807, 93 S.Ct. 105, 34 L.Ed.2d 66, a three-judge court granted preliminary injunctive relief to publishers and·distributors of "sexually oriented materials" whose business records and "stock of goods," including films, had been seized pursuant to search warrant.˙ The Court ordered the return to plaintiffs of all business and personal records, and the return of all photographs, brochures, order forms, and films, less three copies of each which might have evidentiary value in any pending criminal proceeding. In entering such order, the Court stated, 339 F.Supp. at 51:

"It is appropriate to say one last word. The few samples which we have seen of

the material involved in this case clearly exceed the boundaries of good taste. We do not express any opinion on whether or not they are obscene. Confronted with them, most people would probably express sentiments similar to our own as to their obnoxiousness. But constitutional principles are meant for the protection of the unpopular and the obnoxious. If the materials are found to be obscene, there are adequate remedies under the criminal laws of both the states and federal Government to punish those responsible for their circulation. But censorship in advance of such a finding is not permitted. Nor is a mass police raid undertaken without due process for the purpose of punishing those who publish materials found hateful by a majority of the citizens.

"The censor and the illegal police raiding party are even less welcome in this country than the peddler of execrable sex materials, and with good cause. If such activity as appears in the instant case is not promptly rebuked and redressed, who will call an eventual halt, and where will it be called, when the civil liberties of all the citizens become more and more eroded in the name of 'decency?' "

Injunctive relief has been granted to enjoin police action which goes beyond that necessary to enforce criminal obscenity laws on the basis that harassing tactics, designed to "chill" first amendment rights, constitute infringements upon First Amendment rights. In *Llewelyn v. Oakland County Prosecutor's Office,* 402 F.Supp. 1379 (E.D. Mich.1975), theatre operators sought to enjoin actions of city and county attorneys who had been seizing copies of film and making successive arrests pursuant to warrants issued by judicial officers. The Court found such multiple seizures and multiple arrests to be harassment within the exceptions to the *Younger v. Harris* doctrine of abstention, and enjoined such conduct. The Court stated, 402 F.Supp. at 1392:

"The basic error of (defendant's) position lies in his treatment of a prosecution for dissemination of materials presumptively protected by the first amendment

in the same manner as any other criminal prosecution. (Defendant's) counsel analogized this case to a case involving bank robbery. Such an approach falls far short of the 'necessary sensitivity to freedom of expression', required by the Constitution."

In *Bee See Books, Inc. v. Leary,* 291 F.Supp. 622 (S.D.N.Y.1968), book dealers sought to enjoin police officials from stationing uniformed policemen in their book stores, pursuant to provisions of the Civil Rights Act, 42 U.S.C. § 1983. From the statement of facts stated in that opinion, it appears that the book stores had been searched pursuant to warrant on numerous occasions, that eleven employees had been arrested and pled guilty to violations of the state obscenity statute over a two-year period. The police commissioner then determined that, instead of obtaining more warrants and making further arrests, he would post uniformed police officers on the store premises for the purpose of making arrests for the sale of hard core pornography, although they were cautioned not to interfere with patrons leaving or entering the premises. The officer on duty stood in the doorway of the store, and occasionally entered the store and stood or sat there in full view of patrons. The store owners offered evidence that their sales and receipts fell 50% following such police activity and that they would be forced out of business should such conduct be continued. In granting injunctive relief, the Court stated, 291 F.Supp. at 626–627:

"I am of the view that the challenged activities of the police in the case at bar do not meet constitutional standards imposed by the First Amendment for enforcement of State Obscenity Laws. The constant presence of uniformed officers in plaintiffs' book stores, in full view of patrons, is plainly a restraint on the distribution of the publications which plaintiffs sell . . . The effect of the constant presence of the officer in full uniform under these circumstances is to indicate to patrons of plaintiffs' stores that any material sold in the stores is

illegal and that any purchases may lead to prosecution. This is necessarily advance censorship. * * *

"There is here an effective restraint on distribution of publications without any of the 'rigorous procedural safeguards' which must be scrupulously observed in the regulation of obscenity . . .
Implicit in the constant presence of the uniformed officers on plaintiffs' premises are threats of imposing legal sanctions and other means of coercion, restraint and intimidation against the distribution of numerous publications which have not been found to be obscene and which may not fall into that category."

In *Eagle Books, Inc. v. Reinhard*, 418 F.Supp. 345 (N.D.Ill.1976), *appeal pending*, a three-judge court enjoined the enforcement of a state obscenity statute upon application of a bookstore owner who had been subjected to a series of searches at least in part authorized by search warrants. Items seized during these searches included film, film projectors, money, business records, a cash register, safe, and other items, and employees were arrested on the premises. It was noted that in the course of the searches, seizures and arrests, the bookstores could not operate, and temporarily ceased business. As in the two cases now before this court, alternative search procedures had been subsequently used, but the defendant City Attorney and Police Chief would not concede that their original procedures were unconstitutional. The court granted prospective injunctive relief against enforcement on the premises of plaintiff's bookstores of the state obscenity statute, which was declared to be overbroad, non-specific, and unconstitutional.

■ Under the circumstances disclosed in the resumé of facts described above in these cases, and under the law discussed above, this court must find that the acts of the defendants in forcing theatre patrons to divulge their names, addresses and other personal information, in physically arresting employees of the theatres, when such arrests and removal from the premises effectively "close down" the theatres, and the wholesale seizure of money, tickets and other property necessary for the operation of such theatres, beyond that needed for evidentiary value constitute an impermissible prior restraint of rights preserved under the First Amendment, and that such conduct should be enjoined. Injunctive relief is to be limited to these three instances of impermissible prior restraint. Beyond this, defendants are free to enforce the state obscenity laws in a manner free from constraint of this Court. Accordingly,

IT IS ORDERED that the Motion of Plaintiffs in Cause No. 77–1118 for preliminary injunctive relief be, and it is hereby SUSTAINED;

IT IS ORDERED that the Motion of Plaintiff in Cause No. 77–1076 for preliminary injunctive relief be, and it is hereby SUSTAINED; and

IT IS FURTHER ORDERED that counsel for plaintiffs shall prepare and submit an appropriate Injunctive Order, in accordance with the foregoing findings and conclusions of the Court. Such Injunctive Order shall be prospective in nature, and shall be limited to proscribing the following conduct:

a) Forcing theatre patrons to divulge their names, addresses and other personal information to police officers against their will;

b) The physical arrest of theatre employees, when such arrests and removal from the premises would effectively close down the theatres; and

c) The wholesale seizure of money, tickets, and other personal property necessary for the operation of the business of such theatres, beyond those items reasonably necessary for evidentiary value.

IT IS FURTHER ORDERED that the Request for Class Action Certification by plaintiff Eugene Maguin in Civil Action No. 77–1076 be set down for hearing and argument on the 8th day of August, 1977, at 1:30 p. m.